ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Jayco International, LLC | ) | ASBCA No. 58461 |
| | ) | |
| Under Contract No. N40442-11-P-8440 | ) | |

APPEARANCE FOR THE APPELLANT:       Gerald H. Werfel, Esq.
                                         Pompan, Murray & Werfel, P.L.C.
                                         Alexandria, VA

APPEARANCES FOR THE GOVERNMENT:    Ronald J. Borro, Esq.
                                           Navy Chief Trial Attorney
                                         Davis Young, Esq.
                                         Senior Associate Counsel
                                         Stephen A. Copetas, Esq.
                                         Jeffrey N. Davenport, Esq.
                                         Assistant Counsel
                                         Military Sealift Command Norfolk

## OPINION BY ADMINISTRATIVE JUDGE CLARKE ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This appeal arises out of a contract for forklift batteries to be used on forklifts deployed on a Navy ship. The Navy terminated the contract because the batteries delivered were not the batteries identified in the contract. Jayco contends that the Navy modified the contract to allow "or equal" batteries and that it delivered batteries that were equal to those identified in the contract. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. We deny the motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 23 May 2011, the Military Sealift Fleet Support Command (MSFSC) posted amended Solicitation No. N40442-11-T-7464 stating:

> Military Sealift Fleet Support Command (MSFSC), Norfolk,
> VA intends to award a firm fixed price purchase order for
> USNS ALAN SHEPARD for the following Brand Name or
> Equal parts:

ITEM P/N
(OR EQUAL) DESCRIPTION QTY PRICE PER UNIT
EXTENDED PRICE
1 18-E80S-21 BATTERY FORKLIFT QTY: 10
2 18-E80S-27 BATTERY, GEL, MAINT FREE FOR 10K
FORKLIFT, QTY: 4 EA

(R4, tab 5 at 1-2)  The name of the manufacturer (brand) was not included in the solicitation, however, appellant agrees that the part numbers "correspond to batteries manufactured by EnerSys, Inc." (R4, tab 8 at 2; app. opp'n at 2, ¶ 4).

2.  The solicitation incorporated by reference FAR 52.211-6, BRAND NAME OR EQUAL (AUG 1999), that includes the following language:

> (a)  If an item in this solicitation is identified as "brand name or equal," the purchase description reflects the characteristics and level of quality that will satisfy the Government's needs.  The salient physical, functional, or performance characteristics that "equal" products must meet are specified in the solicitation.
>
> ....
>
> (d) Unless the offeror clearly indicates in its offer that the product being offered is an "equal" product, the offeror shall provide the brand name product referenced in the solicitation.

(R4, tab 5 at 3)

3.  The solicitation, as modified, listed the following salient characteristics:

> Batteries must fit in both Hyster E40XM and E60XM forklifts without modifications to either forklift.
>
> Batteries must be VRLA (Valve Regulated Lead Acid) type (maintenance free).
>
> Batteries must be "Shock Hardened"

2

Batteries must be UL rated as "EE".

(R4, tab 5 at 4)[1]

4. On 25 May 2011, Jayco International, LLC (Jayco) submitted its quote in response to the amended solicitation. The quote identified the products offered as ten "18-E80S-21EE SmartHog sealed tubular battery" at a unit price of $14,714.57 for a total price of $147,145.70 and four "18-E80S-27EE SmartHog sealed tubular battery" at a unit price of $18,647.18 for a total price of $74,588.72. (R4, tab 6 at 2) Both batteries complied with "SparkProof tray (EE)," "Shock Hardened," and "VRLA" (*id.*). The total price of the quote was $221,734.42. The quote included "[a]ll of the pages of the solicitation and the Amendment/Modifications attached hereto and submitted with this proposal are hereby incorporated by reference and all of the clauses and statements contained therein are fully agreed to without exception" (*id.* at 3).

5. On 8 June 2011, MSFSC issued Purchase Order No. N40442-11-P-8440 (8440) to Jayco for ten EnerSys forklift batteries part No. 18-E80S-21 for a total cost of $147,145.70 and four batteries (gel) part No. 18-E80S-72 for a total price of $74,588.72 for a cumulative total price of $221,734.42 (R4, tab 2 at 1, 4). The delivery date for the batteries was 25 July 2011 (*id.* at 5). Although the block on the SF 1449 requiring Jayco to sign the order was not checked (*id.* at 1), an email accompanying the award requested that Jayco sign blocks 30a, b, and c and return (R4, tab 14 at 2). Jayco's president, Mr. Walko, signed the order on 9 June 2011 (R4, tab 13).

6. On 8 July 2011, Jayco issued a purchase order to EnerSys, Reading, Pennsylvania, for ten 18-E80S-21EE SmartHog batteries and four 18-E80S-27EE SmartHog batteries for a total amount of $211,720.00 (gov't reply, attach. 1). On 13 July 2011, Mr. Walko emailed Mr. Shoemake, MSFSC, stating that after talking with EnerSys he anticipated that Jayco could not deliver until 23 August 2011 (R4, tab 12 at 1).[2] On 7 September 2011, Mr. Walko emailed Mr. Zagrocki, MSFSC, stating that as soon as it was confirmed that the batteries are EE rated they will be shipped (*id.* at 3-4). On 26 September 2011, Mr. Walko emailed Ms. Wright, MSFSC, stating that the batteries were ready to ship but before shipment Jayco needed to send MSFSC an assignment of claim form and MSFSC needed to get it back to Jayco "right away" and that "time is of the essence" (*id.* at 5). On 7 October 2011, Mr. Meyers, Bibby Financial Services, emailed Mr. Shanks, MSFSC, a copy of an unsigned Instrument of Assignment (IOA) and Notice of Assignment (NOA) (R4, tab 24). Mr. Meyers wrote:

> As Bibby is looking to work with Stephen Walko from Jayco International, please find the assignment and instrument of

---

[1] No electrical characteristics, i.e., cold cranking amps, etc. were listed.

[2] The pages in Rule 4, tab 12 were not sequentially numbered so the Board numbered the pages 1 to 31.

3

claims as would be provided to you assuming you are willing to approve the assignment of claims with to [sic] Bibby. We will make sure the formal steps are taken, but wanted to get this in front of you first to see if we should take those steps.

(*Id.* at 2)[3]

7. On 6 October 2011, Mr. Walko emailed Mr. Shoemake, MSFSC, stating:

> This has not shipped yet because we have to do an assignment with the bank and there was a snafu with that.
>
> Andy and I are working to get this done ASAP.
>
> The product is ready to ship once we get the bank assignment in place with the government.

(R4, tab 12 at 6-7)

8. The record includes a copy of the IOA signed by Mr. Walko on 3 November 2011 and by Mr. Miller, Pulaski Bank, on 3 November 2011 and an NOA signed by Ms. Lieson, Bibby Financial Services, on 8 December 2011 and by the MSFSC contracting officer on 9 December 2011 (R4, tab 22).

9. On 7 February 2012, Jayco issued a purchase order to Interstate PowerCare SoCal, Garden Grove, California, for ten Hawker 18-75IEL-21EE[4] and four Hawker 18-75IEL-27EE batteries (gov't mot., ex. C).

10. On 9 February 2012, Mr. Walko emailed Mr. Jennings, supervisory contract specialist, MSFSC, and informed him that the batteries would be shipped on 13 March 2012 (R4, tab 12 at 11). Mr. Jennings responded to Mr. Walko on the same day stating:

> We have spoken with the battery manufacturer, EnerSys, about the availability/status of batteries. EnerSys says they have no batteries in stock and none in the pipeline. Are you sure you are providing the correct batteries?

(R4, tab 12 at 11) Mr. Walko replied, "[a]bsolutely" (*id.*).

---

[3] There is no response from MSFSC in the record.

[4] It is unclear why the order identifies the batteries as "IEL" since the name plate on the batteries delivered clearly identifies the batteries as "EL" (R4, tab 16 at 11).

4

11.  On 17 February 2012, Mr. Jennings emailed Mr. Walko stating:

> Your earlier email message stated that the fork truck
> batteries will ship on March 13, 2012. Please confirm that
> you are supplying EnerSys manufactured batteries in
> accordance with the EnerSys part number in purchase order
> N40442-11-P-8440 awarded on 08 June 2011. If you cannot
> comply with the requirements of the purchase order, this
> procurement will be terminated for cause in accordance with
> FAR 12.403(c). Please provide your response as soon as
> possible.

(R4, tab 12 at 16) Mr. Walko responded to Mr. Jennings by email on the same day
stating that Jayco was providing batteries that were "or equal" to the part numbers in the
contract (*id.* at 15). Mr. Walko went on to write:

> Ricky, I know you were not personally involved in this, but in
> light of the many months (instead of a few days) it took for
> the government to complete our assignment paperwork (two
> of our orders from the manufacturer were taken by the
> government while we were waiting for our assignment
> paperwork so that we had to reorder the batteries two more
> times), and in light of the corrections having not been made to
> the contract for the proper P/N's, we believe it is in the
> government's and Jayco's best interest to issue a modification
> clarifying the above description and P/N's as stated.
>
> We want to be assured of getting paid for these batteries.
> Please issue a modification clarifying the batteries we are
> providing and the new delivery date.

(*Id.*)

12.  Mr. Jennings responded to Mr. Walko on 22 February 2012 stating in part:

> Thanks for the additional information. You still have not
> answered my question: Are you supplying EnerSys
> manufactured batteries? Even though the synopsis/solicitation
> states the intent to award for "brand name or equal" parts, I
> must ensure the parts you are preparing to ship will meet the
> Government's requirement. None of the MSC engineering
> personnel involved are aware of the existence of an "equal"
> part. We have checked with the manufacturer and they do not
> know of any equal parts. The manufacturer also insists you

5

have not placed an order with them and they have no batteries in stock....

(R4, tab 12 at 14) Mr. Jennings went on to state that "[i]n order to ensure the batteries are acceptable" he would send an engineering representative to inspect the batteries at the vendor's facility at no cost to Jayco. He asked for vendor contact information and said he would modify the contract to add the on-site inspection. (*Id.*) He stated, "[t]he Government will not be obligated to pay for batteries that are shipped here and determined to be unacceptable upon inspection" (*id.*). He ended by stating, "[y]ou have been granted more than enough time to complete this requirement. My only other option is to terminate for cause." (*Id.*)

13. On 23 February 2012, Mr. Walko responded:

> Thought that I had answered your question. Yes, we are providing Enersys manufactured batteries. They are manufactured at Enersys/Hawker's forklift battery plant in Tennesee [sic], Cage Code (3C3B9). Hawker is a division or subsidiary of Enersys....
>
> I understand that you must ensure that the parts meet the government's requirements and am pleased that you want to do a QAR inspection. I will get POC information to you later today or tomorrow but wanted to get this response off to you right away....
>
> Enersys and Enersys/Hawker batteries are physically the same dimensions, same technology and they both use the same cells to make the batteries. Both are SHOCK HARDENED, SPARKPROOF TRAY, and VRLA and they both are made for the E40XM and E60XM....
>
> Our batteries can be inspected at the plant's Cage Code address (3C3B9) and they will be shipped, packaged to your specifications, with a Certificate of Conformance, direct from the plant to San Diego.

(R4, tab 12 at 13-14)

14. In early March 2012 the government prepared to conduct the inspection on 23 March 2012 at the Hawker facility (R4, tab 12 at 18).

15. On 12 March 2012, Hawker Powersource, Inc., Ooltewah, Tennessee,[5] shipped five Envirolink 018-075EL-21 batteries to the MCS BATS warehouse, San Diego, California (R4, tab 15). This shipment arrived at MCS BATS, San Diego on 20 March 2012 (R4, tab 16 at 3). Inspection of the batteries confirmed that they were Hawker brand 18-75-EL-21EE[6] (*id.* at 4).

16. On 22 March 2012, Mr. Hughes, material handling equipment program manager, Military Sealift Command, and a representative from Hyster, the fork lift manufacturer, were on their way to the Hawker plant, Chattanooga, Tennessee, to inspect batteries when they were informed by phone and email that the Jayco batteries had been mistakenly shipped and were not available for inspection (R4, tab 16 at 4). They were also told that the plant manager would not see them (*id.*). The next day Mr. Hughes arrived at the Hawker plant and was able to meet with the plant manager, Mr. Colwell. Mr. Hughes reports that Mr. Colwell and others from Hawker told him that the batteries sold to Jayco were manufactured at the EnerSys plant in Richmond, Kentucky, and were standard Hawker brand 18-75EL-21EE and 18-75EL-27EE batteries that were not shipboard batteries. They were not gel batteries, were flat plate design, not tubular, did not have as high an ampere hour rating, and did not have proper trays, EMI shielding, cover hold-downs, battery tray hold-downs, nor marine quality wooden reinforcement under the cover required for shipboard batteries (*id.*).

17. On 26 March 2012, Mr. Walko emailed Mr. Jennings stating:

> FYI: The inspection of the batteries did not take place on Friday.
>
> ....
>
> The batteries were ready earlier in the week, but Hawker, contrary to my instructions, accidently shipped out the batteries but were in the process of redirecting them back for inspection.

---

[5] Interstate PowerCare was identified as the billing address (R4, tab 15).

[6] Mr. Hughes memorandum incorrectly states that in addition to the 18-75-EL-21EE batteries that 18-75-EL-27EE batteries were received. The shipping documents (R4, tab 15) and pictures of the batteries (R4, tab 16 at 11) prove that only the 21EE batteries were received.

Please keep me informed of what is going on with this inspection and I will do this [sic] same. I have to get these inspected as soon as possible so we can get paid as we have already paid for these batteries.

(R4, tab 12 at 20)

18. Between 5 April 2012 and 12 April 2012 there were a series of emails between Mr. Walko and Mr. Jennings relating to inspecting the batteries that were at that time at the Navy Warehouse in San Diego (R4, tab 12 at 25-29). Mr. Walko disagreed with Mr. Hughes' comments that the batteries were not equal (R4, tab 12 at 26, 29).

19. On 11 April 2012, Mr. Jennings, contracting officer (CO)[7], signed a letter cancelling Purchase Order No. N40442-11-P-8440 (R4, tab 7). CO Jennings took the position that it was a unilateral contract that lapsed by its own terms when Jayco delivered nonconforming batteries (*id.*).

20. On 23 August 2012, Jayco submitted a certified claim for $237,622.06 to CO Jennings (R4, tab 8). On 18 September 2012, CO Jennings denied the claim taking the position that the unilateral purchase order had "lapsed due to Jayco's failure to successfully perform the contract because it tendered nonconforming items well after the purchase order's required delivery date" (R4, tab 1 at 1). On 14 December 2012, Jayco appealed the CO's final decision to this Board (R4, tab 9). The appeal was docketed as ASBCA No. 58461 on 17 December 2012.

21. On 8 February 2013, EnerSys sent a letter to the MSFSC including the statement:

> I can state categorically that the Hawker Environlink batteries ordered by JAYCO through Interstate Batteries, although suitable for use in many commercial and shore-based applications, do not comply with any of the referenced Military Standards for Navy shipboard batteries with the exception of the UL EE requirement.
>
> These Hawker batteries are not in H.I. Shock trays – there are no provisions on these trays for the battery to be bolted into the forklift frame. Nor is there any provision for the battery covers to be bolted closed. The tray cover lacks any

---

[7] This is the first document that identified Mr. Jennings as the CO rather than a supervisory contract specialist. In a 15 June 2012 email he was still identified as a supervisory contract specialist (R4, tab 12 at 31). It is unclear from this record precisely when he became a CO.

8

reinforcement and is not lined suitably to hold cells in place when the cover is closed. There is absolutely no EMI shielding present on the battery cables. The trays appear to have received a standard commercial paint so it is questionable they would meet the Salt Fog requirement.

From an electrical capacity point-of-view, the Hawker batteries are rated at 75 AH per positive plate. This means they cannot provide the required capacity. The EnerSys 18-E80S-21EE is rated at 800 AH compared to 750 AH for the Hawker 18-75-21 and the EnerSys 18-E80S-27EE is rated at 1040 AH compared to 975 AH for the Hawker 18-75-27.

(R4, tab 20 at 3-4)

22. By letter dated 5 March 2013, Hawker wrote:

The Hawker (18-75IEL-21EE & 18-75IEL-27EE) batteries supplied to JAYCO are commercial off the shelf (COTS) batteries. They are UL EE rated, but have not been designed or tested HI Shock, EMI, or Salinity. The Hawker (18-75IEL-21EE & 18-75IEL-27EE) batteries are not shipboard use approved nor equivalent to the EnerSys (18-E80S-21EE & 18-E80S-27EE) batteries....

(R4, tab 21)

## DECISION

*Procedural History*

On 6 March 2013, the government filed its original motion for summary judgment. Jayco filed its opposition and motion to continue the government's motion on 11 April 2013. The motion to continue essentially took the position that Jayco had not had sufficient time to conduct discovery to defend against the motion for summary judgment. On 23 April 2013, the government withdrew its motion for summary judgment to allow Jayco an opportunity to conduct discovery. On 7 November 2013, the government refiled its motion for summary judgment. On 20 December 2013, Jayco filed its opposition. On 16 January 2014, the government replied to the opposition. From this history we see that Jayco had six months to conduct discovery between the time the government withdrew its original motion for summary judgment on 23 April 2013 and refiled on 7 November 2013. We therefore conclude that Jayco has had sufficient time to conduct additional discovery to defend against the government's motion.

*Contentions of the Parties*

Jayco contends that the contract was modified to allow it to tender "or equal" batteries, that the contract delivery date was extended, and that the Hawker batteries it delivered met the salient characteristics of the EnerSys batteries specified in the solicitation and its quote, and the resulting contract. Jayco complains that the government didn't bother to inspect the Hawker batteries it delivered.

The government contends that the contract was not modified in writing to allow "or equal" batteries and that since Jayco's quote and the resulting contract identified the EnerSys batteries, only EnerSys batteries could be delivered to the government. The government also contends that the proffered Hawker batteries do not meet the salient characteristics of the EnerSys batteries and are therefore not "equal." In its motion the government abandons the position taken previously by the CO (SOF ¶¶ 19, 20) that the purchase order lapsed by its own terms, correctly concluding that a bilateral contract came into existence when the government required Jayco to sign the purchase order. The government "admits" that it waived the original delivery schedule (gov't reply at 12).

*Discussion*

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Any significant doubt over factual issues, and all reasonable inferences, must be resolved in favor of the party opposing summary judgment. *Dixie Construction Co.*, ASBCA No. 56880, 10-1 BCA ¶ 34,422 at 169,918; *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).

The solicitation specified 18-E80S-21 and 18-E80S-27 EnerSys batteries but allowed for "or equal" offers (SOF ¶¶ 1, 2). Jayco offered the 18-E80S-21 and 18-E80S-27 EnerSys batteries (SOF ¶ 4). Accordingly, contract 8440[8] required that Jayco deliver EnerSys 18-E80S-21 and 18-E80S-27 batteries (SOF ¶¶ 1, 5).

Jayco contends that emails between the parties during the period of 17 February 2012 and 23 February 2012 and conversations with the CO effectively modified the contract to allow Jayco to deliver "or equal" batteries and that the Hawker batteries it delivered were equal to the EnerSys batteries (app. opp'n at 3, ¶ 11). We only get to the issue of equality of the Hawker[9] batteries if we first conclude that the contract was modified to allow "or equal" batteries. Whether the batteries are equal is a disputed

---

[8] Although 8440 was issued as a unilateral purchase order (PO), we conclude that the government's insistence that Jayco sign the purchase order and Mr. Walko's signature converted the unilateral PO to a bilateral contract (SOF ¶ 5).

[9] Hawker is a subsidiary of EnerSys (SOF ¶ 13).

10

question of fact. However, whether the contract was modified is a mixed question of fact and law. We must therefore scrutinize the emails and conversations Jayco relies upon, and other facts in the record, to decide if the contract was modified to allow Jayco to tender "or equal" batteries. First, however, we consider an assignment of claims issue raised by Jayco.

*Assignment of Claims*

On 8 July 2011, Jayco ordered ten 18-E80S-21EE and four 18-E80S-27EE SmartHog batteries from EnerSys (SOF ¶ 6). Between July 2011 and December 2011 the parties discussed delivery and financing (SOF ¶¶ 7, 8). On 7 February 2012, Jayco ordered Hawker batteries from PowerCare SoCal (SOF ¶ 9). In a 17 February 2012 email, Jayco asserts that the government took "many months (instead of a few days)" to complete Jayco's assignment of claim documents and as a result the EnerSys batteries it had ordered and were waiting to be delivered were "taken by the government" (SOF ¶ 11). In its opposition, supported by Mr. Walko's declaration, Jayco contends that the Navy delayed approving its assignment of claims[10] and as a result the Navy purchased EnerSys batteries that had been set aside for Jayco's contract:

> The request for assignment of Contract payments was initiated by Jayco in September 2011. For reasons unknown to Jayco, the Navy delayed the assignment of payments for several months and did not approve the assignment until on or about January 2012.
>
> During the time that the Navy delayed approving the assignment of Contract payments, the Navy requested, and Jayco agreed, that EnerSys could provide to the Navy the batteries that had been reserved for Jayco's use in fulfillment of the Contract. The Navy's procurement of such batteries were separate from the procurement related to the Contract.
>
> Due to the Navy's delay in approving the assignment of Contract payments, as well as the Navy's request to take the batteries reserved by EnerSys for use under the Contract, it became necessary for Jayco to fulfill the Contract with batteries that were equal to or better than the brand-name EnerSys batteries.

(App. opp'n at 3, ¶ 10, ex. 1, Walko decl. ¶¶ 15-17) We view this as a contention that the Navy interfered with Jayco's performance.

---

[10] The assignment of claims process affords contractors a mechanism for obtaining financing.

11

The record documents that on 7 October 2011 unsigned copies of an Instrument of Assignment (IOA) and Notice of Assignment (NOA) were provided to the government (SOF ¶ 6). On 26 October 2011, Jayco informed the government that the batteries had not been shipped because Jayco did not have an assignment with the bank because of a "snafu" that Jayco was working on correcting (SOF ¶ 7). There is nothing in the record explaining the "snafu." The IOA was signed by Jayco and Pulaski Bank on 3 November 2011 (SOF ¶ 8). The NOA was signed by Bibby Financial Services on 8 December 2011 and the government on 9 December 2011 (id.). This record reflects that the government took one day to sign the NOA. In its reply section C the government points to these documents in the record that tend to support the government's argument that its response times for the financing documents were reasonable. However, in reply section D the government asserts that (1) there is no evidence that EnerSys reserved batteries for Jayco, (2) the government did not request another contractor to purchase the batteries allegedly reserved, and (3) if EnerSys had sold batteries reserved for Jayco, replacement batteries could have been ordered (gov't reply at 12). The government's argument suffers from the same weakness it contends affects Jayco's[11]; these arguments are unsupported conclusory assertions by counsel. Jayco supports its contentions with Mr. Walko's declaration and deposition testimony. The government fails to include anything from EnerSys or government personnel to support its reply. If it had, it is likely that credibility would be placed at issue for diametrically opposed testimony. Since all inferences must be drawn in favor of Jayco, we must credit Mr. Walko's testimony and the inference that the Navy interfered with Jayco's ability to perform. The record on this point is insufficient for the Board to grant summary judgment in favor of the Navy.

*Contract Modification*

On 8 July 2011 Jayco issued a purchase order to EnerSys, Reading, Pennsylvania, for ten 18-E80S-21EE SmartHog batteries and four 18-E80S-27EE SmartHog batteries (SOF ¶ 6). On 7 February 2012, Jayco ordered Hawker batteries from Interstate PowerCare SoCal in California (SOF ¶ 9).[12] Two days later, the Navy, after checking with EnerSys and learning they had no batteries in stock and none in production, asked Jayco if they were providing the "correct batteries" (SOF ¶ 10). Mr. Walko responded, without elaboration, "absolutely" (id.). On 17 February 2012 the Navy again inquired if Jayco was supplying the EnerSys batteries specified in the contract (SOF ¶ 11). Mr. Walko responded the same day and for the first time informed the Navy that Jayco was providing "or equal" batteries (id.). In that 17 February 2012 email, Mr. Walko asked Mr. Jennings to "issue a modification clarifying the above description and P/N's as

---

[11] The government argues, "[m]ere conclusory assertions do not raise a genuine issue of fact" (gov't reply at 4) (citing *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984).

[12] The existing record of what transpired between 8 July 2011 and 7 February 2012 does not adequately explain the reason for the second order.

stated" (*id.*). On 22 February 2012, Mr. Jennings responded but that response was equivocal. Mr. Jennings did not demand that EnerSys batteries be delivered as he had before. Instead, after being told that Jayco intended to supply "or equal" batteries, Mr. Jennings stated he "must ensure the parts you are preparing to ship will meet the Government's requirement" and he said he would send an engineer representative to inspect the batteries at the vendor at no cost to Jayco. (SOF ¶ 12) While Mr. Jennings indicated a willingness to consider "or equal" batteries, he did not agree to "issue" a written modification to the contract as requested.

On 23 February 2012, Mr. Walko provided a response stating "we are providing Enersys manufactured batteries" and that "Enersys and Enersys/Hawker" batteries are "physically the same" (SOF ¶ 13). Mr. Walko stated he would provide a POC at the vendor's facility to facilitate a government inspection (*id.*). In early March 2012 the government prepared to have Mr. Hughes, MHE program manager, and a representative from Hyster (fork lift manufacturer) conduct an inspection of the batteries Jayco intended to deliver on 23 March 2012 at the Hawker facility in Tennessee (SOF ¶ 14). On 12 March 2012, five Hawker Envirolink 018-075EL-21 batteries were shipped by Hawker Powersource, Inc., Ooltewah, Tennessee, to MCS BATS Warehouse, San Diego, California (SOF ¶ 15). The inspection of the Hawker batteries was scheduled for 23 March 2012 at the Hawker plant in Chattanooga, Tennessee. As Mr. Hughes and the Hyster representative were in route to Chattanooga, Hawker informed them by phone and email that the batteries had been mistakenly shipped and were not available for inspection (SOF ¶ 16). This was ten days after the batteries had been shipped to the Navy. There is no explanation in the record as to why Mr. Walko and/or Hawker did not inform Mr. Hughes, well before he commenced travel to Chattanooga, that the batteries were no longer there. Mr. Hughes was initially told that the Hawker plant manager would not see him, but was able to meet with the plant manager and others even though he could not inspect the batteries. Mr. Hughes reported in his 31 August 2012 memorandum that he learned from the Hawker representatives that the Hawker batteries were not equal to the EnerSys shipboard batteries (SOF ¶ 16).

On 26 March 2012, Mr. Walko informed Mr. Jennings that Mr. Hughes' inspection could not take place because the batteries, contrary to his instructions, had been shipped (SOF ¶ 17). Mr. Walko stated he was in the process of having them returned for inspection (*id.*). This, however, was six days after the Hawker batteries arrived at the Navy Warehouse in San Diego (SOF ¶ 15). None of this give and take on the inspection is adequately explained in the record, but sending Mr. Hughes to inspect the Hawker batteries could be consistent with the modification alleged by Jayco.

A bilateral modification to a contract must satisfy all of the elements of contract formation: mutual intent to contract including an offer; an acceptance; consideration; and actual authority on the part of the government representative. *Northrop Grumman Systems Corp. Space Systems Division*, ASBCA No. 54774, 10-2 BCA ¶ 34,517 at 170,235, 170,237. In order to meet this burden Jayco relies upon the emails discussed

13

above and a declaration by Mr. Walko asserting, "[b]ased upon multiple conversations between myself and Ricky Jennings, Contracting Officer for the Contract, the parties agreed that the Contract was modified to permit delivery of the Hawker Batteries subject to inspection to confirm their status as 'or equal' to the EnerSys batteries" (app. opp'n, ex. 1, Walko decl. at 3, ¶ 19). Mr. Walko testified similarly in his deposition (app. opp'n ex. 3 at 51). Mr. Walko provides few details of the conversations he states he had with CO Jennings. The Navy responds to Mr. Walko's testimony, just as it did before, with mere contentions by government attorneys. The government argues there is no evidence indicating that the CO had agreed to substitute Hawker batteries for EnerSys batteries (gov't reply at 9); however, Mr. Walko's testimony is evidence. The government presents no declaration or affidavit or cite to deposition testimony from CO Jennings disagreeing with Mr. Walko's testimony. Had there been, again an issue of credibility would exist. Since all inferences must be drawn in favor of Jayco, we must credit Mr. Walko's testimony, uncontested by sworn testimony from CO Jennings, that he and CO Jennings agreed to the change in conversations.[13] The record on this point is insufficient for the Board to grant summary judgment in favor of the Navy.

## CONCLUSION

For the reasons stated above, the government's motion is denied.

Dated: 12 February 2014

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

REBA PAGE
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

---

[13] The government asserts that only a written change would suffice (gov't reply at 9), but it ignores well established legal support for the possibility of oral or constructive changes. *Elter S.A.*, ASBCA No. 52349 *et al.*, 01-2 BCA ¶ 31,547 at 155,809-10; *Gray Personnel, Inc.*, ASBCA Nos. 54652, 55833, 13 BCA ¶ 35,211 at 172,763.

14

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58461, Appeal of Jayco International, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals